**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Julie Ann Lacy

    v.                                                    Civil No. 15-cv-134-JL

Carolyn W. Colvin,
Acting Commissioner,
U.S. Social Security
Administration

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Julie Ann Lacy challenges

the Acting Commissioner's decision to deny her application for

Social Security disability insurance benefits ("DIB") under

Title II of the Social Security Act, 42 U.S.C. § 423.  The

Acting Commissioner moves for an order affirming her decision.

For the reasons that follow, the decision of the Acting

Commissioner should be affirmed.


## I. **Standard of Review**

The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g). The court, however, "must uphold a denial of social security disability benefits unless 'the Secretary has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of Health, Educ., & Welfare, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of Health and Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991)

(per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of Sec'y of Health and Hum. Servs., 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole . . . ."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of Health and Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981)).


## II. **Background**

Pursuant to Local Rule 9.1, the parties have submitted a joint statement of material facts.  Doc. no. 14.  That statement is part of the court's record and will be summarized here, rather than repeated in full.

In 2008, Lacy began to seek treatment for wrist and elbow pain.  Doc. no. 14 at 2-3.  From 2008 to 2010, Lacy frequently visited Dr. Moby Parsons, and, in February 2010, Dr. Parsons gave Lacy a Cortisone injection.  Id. at 2-4.  Several months later, though, Lacy reported continued elbow pain.  Id.  Dr. Parsons recommended an MRI and restricted Lacy to the following: "[five] pounds lifting max, [two] pounds lifting frequent, no

3

repetitive grip and pinch-type activity of the right upper extremity."  Administrative Transcript (hereinafter "Tr.") 561.

In March 2011, Lacy underwent right elbow surgery for tendon repair.  Doc. no. 14 at 5.  During a post-operation appointment, a physician's assistant recommended that Lacy avoid "heavy lifting, pushing, pulling, gripping, [or] squeezing-type activities."  Tr. 556.  After surgery, Lacy completed three months of occupational therapy.  Doc. no. 14 at 5.  Upon completion of therapy, Lacy's occupational therapist reported that she "had full active range of motion and had improved her right grip strength to [eighty-five] pounds."  Tr. 322.  The therapist concluded that Lacy was "being discharged from occupational therapy with all goals met regarding her right elbow."  Id.

The next month, Dr. Parsons wrote a letter to Lacy's counsel stating that "[s]he should avoid jobs that require extensive gripping and squeezing on a repetitive basis or heavy lifting."  Tr. 496.  With those restrictions, Dr. Parsons opined that "it would be reasonable for [Lacy] to pursue gainful employment."  Id.  Nevertheless, Dr. Parsons additionally noted that "lateral epicondylitis is a degenerative condition whereby pain often resolves but the tissue itself never completely heals and recurrence is a distinct possibility."  Id.

4

In October 2011, Lacy was evaluated by Dr. Minh Tran for left elbow pain.  Doc. no. 14 at 8.  During the evaluation, Lacy reported that elbow pain was "[three] out of [ten] on the pain scale without any numbness or tingling."  Tr. 408.  Dr. Tran noted that Lacy's elbow pain likely stemmed "from repetitive motions as a weaver" in 2008.  Tr. 415.  Dr. Tran found that Lacy could return to work but could not sustain repetitive motions with her left wrist or elbow.  Id.  Dr. Tran made similar findings during a December 2011 follow-up appointment, including that it was "undetermined" whether Lacy's injuries caused permanent impairment.  Id. at 411.

In February 2012, Lacy was reevaluated by Dr. Parsons. Doc. no. 14 at 9-10.  Records from the appointment note that Lacy's "right elbow seem[ed] to be doing well[,]" but she continued to suffer pain "in the left elbow . . . with repetitive activities."  Tr. 486.  An MRI of Lacy's left elbow revealed no "abnormalities."  Id.  Dr. Parsons assessed that Lacy could work with the following restrictions: "[l]imited repetitive motion, pinching, grasping, gripping, squeezing, bilateral upper extremities with maximal lifting at [five] pounds; frequently [at] [two] pounds."  Id.

In August 2012, Lacy was evaluated by Dr. Robert Waugh for continued left elbow pain.  Tr. 480.  Lacy reported she experienced "tingling" that was "aggravated by prolonged

gripping and squeezing." Id.  One month later, Lacy was reevaluated by Dr. Waugh for numbness in her hands.  Doc. no. 14 at 10-11.  During the evaluation, Lacy reported that her numbness occurred when she went grocery shopping, including when she would place items into her shopping cart, on the register, and into her car.  Tr. 480.  Lacy stated, however, that she did not experience symptoms while performing similar activities at home.  Id.  Dr. Waugh concluded that Lacy "may develop symptoms of carpal tunnel syndrome," but she "has no evidence of carpal tunnel syndrome today . . . and her nerve studies were normal." Id. at 481.

In August and September 2012, Lacy was evaluated by Dr. Parsons for elbow pain and hand numbness.  Tr. 515.  During a follow-up appointment in November 2012, Dr. Parsons gave Lacy the following work restrictions: "no repetitive gripping and squeezing bilateral elbows, limited pinch/grasp bilateral, [three] pound lifting max, [and] [one] pound lifting frequent." Tr. 517.

The next month, state-agency consultant Dr. Burton Mault performed an assessment of Lacy's residual functional capacity ("RFC")[1] based on a review of her medical records.  Doc. no. 14

---

[1] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).

at 11; Tr. 62-64.  Dr. Mault concluded that Lacy could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and push or pull without limitation.  Tr. 63. Dr. Mault also found that Lacy had no manipulative limitations and could stand, walk, or sit for six hours in an eight-hour work day.  Id.

Several months later, in April 2013, Lacy reported to Dr. Tran that she had no further numbness or tingling in her hands following a home exercise program.  Doc. no. 14 at 13.  Dr. Tran concluded that Lacy's "[l]ikely mild carpal tunnel syndrome" was "resolved."  Tr. 803.

In November 2013, Lacy visited Dr. Parsons for elbow pain and "a recent flare with some locking and radiating pain in the extensor muscles of her hand."  Tr. 805.  That same day, Dr. Parsons completed a medical source statement and worker's compensation form.  Doc. no. 14 at 14-15.  Dr. Parsons wrote in his medical source statement that Lacy would be incapable of tolerating even "low stress" jobs and, as a result of her impairments, would miss more than four days each month.  Tr. 789-92.  Dr. Parsons further wrote that Lacy could rarely lift anything less than ten pounds and had significant limitations with reaching, handling, and fingering.  Id.; doc. no. 14 at 15. Dr. Parsons's worker's compensation form similarly indicated that she had reached maximum medical improvement, her injury had

caused permanent impairment, and she would be unable to work. Tr. 867.

After the Social Security Administration denied Lacy's claim for DIB, she received a hearing before an Administrative Law Judge ("ALJ") in December 2013.  Doc. no. 14 at 1.  During the ALJ hearing, Lacy testified that the pain in her left and right elbows were "about equal."  Tr. 28.  Lacy testified that she no longer had limitations with her hands as a result of therapy and home exercises.  Doc. no. 14 at 16.  For both elbows, Lacy estimated that her average level of pain was five out of ten, and she could not recall the last time she felt pain above a five.  Id.  During the hearing, the ALJ also heard testimony from a vocational expert ("VE").  Id. at 17.

After the hearing, the ALJ issued a decision that included the following relevant findings of fact and conclusions of law:

> [Lacy] has the following severe impairments: bilateral lateral epicondylitis; status post right elbow surgery; degenerative disc disease of the lumbar spine; headaches; and obesity . . . .
>
> . . .
>
> After careful consideration of the entire record, the undersigned finds that [Lacy] has the [RFC] to perform light work . . . with the following additional limitations: occasionally lift up to [ten] pounds; occasionally push and pull bilaterally . . . frequently reach bilaterally including overhead reaching; frequently handle and finger bilaterally . . . [and] is limited to simple and routine tasks consistent with unskilled or semiskilled work . . . .

8

. . .

[Lacy's] statements in combination with the medical evidence of record suggest that her symptoms do not impose disabling-level limitations . . . .

. . .

Dr. Parsons['s] February 2012 opinion, shared by Dr. Tran, is given little weight. . . . [R]estrictions [by Dr. Parsons in August 2012] are given little weight. . . . Because Dr. Parsons['s] treating source statement conflict with substantial evidence of record in this record, his assessment is given little weight.

. . .

State agency medical consultant [Dr. Nault's] . . . [November 2012] opinion was well supported by specific citation to the medical evidence and by narrative explanation . . . .  In light of more recent evidence, the undersigned has set forth some nonexertional limitations on top of the base exertional restriction suggested by Dr. Nault.

. . .

Considering [Lacy's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Lacy] can perform . . . .

Doc. no. 14 at 18-19; Tr. 72-82.  As a result, the ALJ found

that Lacy was not disabled within the meaning of the Social

Security Act.  Doc. no. 14 at 1.  The Appeals Council denied

Lacy's request for review, and she soon after brought her claim

to this court.  Id.


### III. Discussion

**A.    The Legal Framework**

To be eligible for disability insurance benefits, a person must: (1) be insured for those benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(E).  To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Acting
> Commissioner] considers objective and subjective
> factors, including: (1) objective medical facts; (2)
> [claimant]'s subjective claims of pain and disability
> as supported by the testimony of the claimant or other
> witness; and (3) the [claimant]'s educational
> background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of Health

and Hum. Servs., 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v.

Sec'y of Health and Hum. Servs., 690 F.2d 5, 6 (1st Cir. 1982)).

**B.   Lacy's Claims**

Lacy claims that the ALJ erred in three ways: (1) by

formulating an RFC that is not supported by substantial

evidence; (2) by failing "to give good reasons" why the opinions

of Lacy's treating physicians were not given greater weight; and

(3) by failing to properly weigh the applicable factors in

determining Lacy's credibility.  The court considers each of

Lacy's claims in turn.

1.   The ALJ's RFC Determination

Lacy argues that the ALJ's RFC determination was not

supported by substantial evidence.  Specifically, Lacy

challenges the following conclusions by the ALJ: (1) that she

can "occasionally lift up to [ten] pounds; (2) "frequently reach

bilaterally including overhead reaching;" and (3) "frequently

handle and finger bilaterally."  Tr. 76.  Lacy believes that

these RFC determinations are in improper because her treating

physicians "consistently assigned [greater] limitations to

11

reaching, handling, fingering and lifting throughout the period
at issue . . . ."  Doc. no. 9-1 at 5.

In support, Lacy cites various medical records and
appointments from 2011 to 2013, including:

- An April 2011 appointment with Dr. Parsons where he
  recommended Lacy "avoid heavy lifting, pushing, pulling,
  gripping, or squeezing."  Tr. 557.

- Two workers' compensation forms from October and December
  2011 where Dr. Tran recommended that Lacy avoid repetitive
  motions with her left wrist and elbow.  Tr. 411, 415.

- A February 2012 appointment where Dr. Parsons recommended
  that Lacy have "[l]imited repetitive motion, pinching,
  grasping, gripping, squeezing, bilateral upper extremities
  with lifting a [five] pounds; frequently, [two] pounds."
  Tr. 550.

- An August 2012 workers' compensation form where Dr. Parsons
  found that Lacy was limited in pinching and grasping as
  well as limited in repetitive motions with both wrists and
  elbows.  Tr. 869.

- A November 2012 appointment with Dr. Parsons where he
  recommended work restrictions, including "no repetitive
  gripping and squeezing bilateral elbows . . . limited
  pinch/grasp bilateral . . . [three] pound lifting max . . .
  [and] [one] pound lifting frequent."  Tr. 544.

- A November 2013 "Physical Impairment Medical Source
  Statement" by Dr. Parsons where he concluded that Lacy
  could never carry more than ten pounds and rarely carry
  less than 10 pounds; grasp, finger, or reach less than ten
  percent of the time during an eight-hour workday with her
  right hand and arm; and grasp, finger, or reach less than
  thirty percent of the time with her left hand and arm.  Tr.
  790.

Doc. no. 9-1 at 5-8.

In response, the Acting Commissioner points to other evidence in the medical record cited by the ALJ in his written decision to contend that the ALJ's RFC determination was supported by substantial evidence.  Some records cited by the ALJ in his written decision include:

- A May 2011 letter by Dr. Parsons stating that Lacy should only "avoid jobs that require <u>extensive</u> gripping and squeezing on a repetitive basis or <u>heavy</u> lifting."  Tr. 496 (emphasis added).

- A June 2011 discharge summary following occupational therapy noting that Lacy "had full active range of motion and had improved her right grip strength to [eighty-five] pounds[,] . . . was able to perform her daily activates without pain or discomfort[,] . . . and left "therapy with all goals met regarding her right elbow."  Tr. 322.

- A December 2011 appointment where Dr. Parsons found that Lacy "ha[d] [a] full . . . range of motion without pain" in both elbows and "no pain with resisted wrist extension." Tr. 491.

- A February 2012 MRI of Lacy's left elbow that was revealed to be "[u]nremarkable" and displayed "no evidence of lateral epicondylitis" or "common extensor tendon tear." Tr. 418.

- The November 2012 medical opinion of the state-agency consultant that Lacy could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds.  Tr. 63.

- A December 2012 interview with Dr. Robert Prescott where Lacy stated that she makes her husband's lunch, takes her children to school, makes supper, cleans dishes, and does laundry and vacuums on the weekends.  Tr. 535.

- Lacy's testimony during the December 2013 hearing that she takes over-the-counter medicine only once a week for pain. Tr. 30.

13

Doc. no. 11-1 at 3-6; AR 78-80.[2]

Here, based on the record and evidence cited by the ALJ, a reasonable mind could conclude that Lacy's positive medical reports, optimistic assessments, and testimony of regular daily activities and mild pain could support the ALJ's RFC limitations.  Yet, the evidence identified by Lacy could alternatively support a more limited RFC.  However, "[t]he fact that the evidence could possibly lead to an alternative conclusion is not sufficient to warrant reversal." Perry v. Astrue, No. CIV.A. 11-40215-TSH, 2014 WL 4965910, at *7 (D. Mass. Sept. 30, 2014) (citing Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987)); see also Ortiz, 955 F.2d at 769 ("[T]he resolution of conflicts in the evidence is for the Secretary, not the courts.").

Lacy further argues, though, that "[t]he only medical opinion which did not assign limitations for reaching, handling, and fingering is that of" the state-agency medical consultant and because the state-agency consultant only reviewed a part of the record, "his opinion cannot constitute substantial weight in light of the multitude of other opinions assigning specific limitations." Doc. no. 9-1 at 8.  Her argument is unpersuasive.

---

[2] As discussed infra, the ALJ gave Dr. Parson's treating source statements "little weight" because they "conflict[ed] with the substantial evidence of record . . . ." Tr. 79.

Generally, "an ALJ may place '[g]reater reliance' on the assessment of a non-examining physician where the physician 'reviewed the reports of examining and treating doctors . . . and supported [his] conclusions with reference to medical findings.'"  Ferland v. Astrue, No. 11-CV-123-SM, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011) (quoting Quintana v. Comm'r of Social Security, 2004 WL 2260103, at *1 (1st Cir. 2004)).  The state-agency consultant did so in this case.  His report shows that he reviewed records from Lacy's treating physicians, including records by Dr. Waugh and Dr. Parsons.  AR 60-64.  Moreover, the state-agency consultant's report also identifies specific examinations and treatment notes from the medical record.  See Moss v. Astrue, No. 1:10-CV-054-JL, 2011 WL 1517988, at *16 (D.N.H. Apr. 21, 2011) ("The ALJ's decision to adopt an assessment by a non-treating physician is further supported if that assessment references specific medical findings indicating that the claimant's file was reviewed with care.").

Nevertheless, it can "be reversible error for an [ALJ] to rely on an RFC opinion of a non-examining consultant when the consultant has not examined the full medical record."  Strout v. Astrue, No. CIV. 08-181-B-W, 2009 WL 214576, at *8 (D. Me. Jan. 28, 2009), aff'd, No. CIVIL 08-181-B-W, 2009 WL 578546 (D. Me. Mar. 5, 2009) (citing Rose v. Shalala, 34 F.3d 13, 18 (1st

15

Cir.1994)).  Here, Lacy points the date of the state-agency

consultant's report – November 2012 – and reasons that the

consultant "only reviewed [a] part of the record" because the

relevant period in this case extends to 2013.  Doc. no. 9-1 at

8.  An ALJ may, however, still rely on a non-treating

physician's report "where the medical evidence postdating the

reviewer's assessment does not establish any greater limitations

or where the medical reports of claimant's treating providers

are arguably consistent with, or at least not 'clearly

inconsistent' with, the reviewer's assessment."  Ferland, 2011

WL 5199989, at *4 (internal citations omitted).  This exception

applies here.

     The ALJ's written opinion notes that although he "set forth

some nonexertional limitations on top of the base exertional

restriction suggested by [the state-agency consultant,] . . .

the thrust" of the opinion was nevertheless "consistent with the

substantial evidence throughout the period at issue . . . ."

Tr. 80-81.  Lacy, by her own arguments, agrees.  Lacy's primary

argument against the ALJ's RFC determination similarly contends

that the record is consistent from 2011 to after the state-

agency consultant's November 2012 report.  See Doc. no. 9-1 at

5-8.  Lacy argument only differs in that she believes the record

supports an alternate medical conclusion.  Id.  Thus, because

Lacy herself agrees that the subsequent reports of her treating

providers are consistent with the earlier record, the ALJ did not err in relying on the stage-agency consultant's report in his RFC determination.  <u>Ferland</u>, 2011 WL 5199989, at *4.

Furthermore, as shown above, the ALJ did not rely solely on the medical opinion of the state-agency consultant but crafted Lacy's RFC based on other evidence in the record, including subsequent testimony and observations by Lacy herself.  A review of "all of the relevant evidence in the record" – including medical history, laboratory findings, lay evidence, and recorded observations – is evidence considered in formulating a RFC. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *5 (S.S.A. 1996); <u>see also</u> <u>Ferraris v. Heckler</u>, 728 F.2d 582, 585 (2d Cir. 1984) (holding that, in determining a RFC, an ALJ "must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others."). Accordingly, because the ALJ did not err in relying on the state-agency consultant's opinion and demonstrated a thorough review of the record, substantial evidence supports the ALJ's RFC determination.

Lacy lastly notes under this section that her treating physician's limited her to lifting nothing more than ten pounds, however, the state-agency consultant found that Lacy could occasionally lift or carry twenty pounds.  Doc. no 9-1 at 10.

Lacy claims that the ALJ's determination that she could "occasionally lift up to [ten] pounds," Tr. 76, was an impermissible "middle path" between the two medical opinions.

Indeed, "an ALJ may not . . . chart a middle course between two divergent medical opinions on the same specific functional capacity." Bubar v. Astrue, No. 11-CV-107-JL, 2011 WL 6937507, at *6 (D.N.H. Dec. 5, 2011), adopted sub nom. Bubar v. US Soc. Sec. Admin., No. 11-CV-107-JL, 2011 WL 6937476 (D.N.H. Dec. 30, 2011).  But even assuming the ALJ erred in this regard, the error is harmless.  An error is harmless "when an RFC finding is more favorable to a claimant than the medical evidence supports." Johnson v. Colvin, No. 1:13-CV-00297-JDL, 2014 WL 4181606, at *3 (D. Me. Aug. 21, 2014).  As discussed above, because substantial evidence supports the ALJ's reliance on the state-agency consultant's opinion, the fact that the ALJ may have improperly charted a middle path between the opinions – providing Lacy the medical benefit of the doubt – does not warrant remand.  See Bubar, 2011 WL 6937507, at *6 ("The court presumes that [the plaintiff] does not object to the ALJ's determination that he had less capacity for balancing, kneeling, and crawling than was indicated by [state-agency consultant's] RFC Assessment.").

2.   <u>Weight Given to Lacy's Treating Physicians</u>

Lacy next argues that the ALJ failed to give "good reasons" for his decision to afford the medical opinions of Dr. Tran and Dr. Parsons little weight.  Doc. no. 9-11 at 10.  Specifically, Lacy contends that the ALJ "failed to consider the length of the treatment relationship, consistency of the opinion, and the specialization of each training source."  <u>Id.</u> at 11.

An ALJ must give "controlling weight" to the opinion of a claimant's treating physician if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in" the medical record.  20 C.F.R. § 404.1527(c)(2).  When an ALJ does not give controlling weight to the opinion of a treating source, he must determine how much weight to give it by applying the following factors: (1) the length of the claimant's treatment relationship and the frequency of examination; (2) the nature and the extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source who gave the opinion; and (6) other factors.  20 C.F.R. §§ 404.1527(c)(2)-(6).  An ALJ need not "explicitly take account of all the factors in [§ 404.1527]," <u>Eley v. Colvin</u>, No. 14-CV-165-JL, 2015 WL 1806788, at *2 (D.N.H. Apr. 21, 2015), but must nonetheless "give good reasons . . . for the weight [he]

give[s] [a claimant's] treating source's opinion." 20 C.F.R. §
404.1527(c)(2).

Here, the ALJ gave Dr. Tran's opinion little weight because
he "set forth a preclusion on repetitive manipulative tasks
despite the absence of abnormal objective evidence." Tr. 78.
The ALJ explained that, before Lacy's March 2011 elbow surgery,
she was restricted to "[l]imited repetitive motion, pinching,
grasping, gripping, squeezing" and lifting nothing more than
five pounds. Tr. 486. After Lacy's surgery, the ALJ noted that
although Dr. Tran "recorded normal physical examination findings
apart from tenderness" and a February 2012 MRI of Lacy's other
elbow was "unremarkable, with no evidence of lateral
epicondylitis and no evidence of common extensor tendon tear,"
Dr. Tran nevertheless recommended similar physical limitations
that were recommended prior to Lacy's March 2011 surgery. Tr.
78. The ALJ concluded that it was unreasonable that the same
limitations – in light of demonstrated physical improvement by
Lacy – would apply after surgery. Id.

The ALJ gave Dr. Parsons's opinion little weight for
similar reasons. The ALJ discussed that, around the time of the
"unremarkable" 2012 MRI, Dr. Parsons also "noted . . . that the
right elbow was doing well and that she only had pain in the
left elbow with repetitive activities." Id. Dr. Parsons, like
Dr. Tran, however, still recommended the same physical

20

limitations Lacy had prior to her surgery.  Id.  The ALJ found
that "with the claimant's clear improvement from surgery and
occupational therapy as recognized by Dr. Parsons himself, it is
not reasonable to fine that the claimant's same limitations from
before surgery and therapy would still apply."  Id.  In
conjunction, the ALJ concluded that Dr. Parsons's workers'
compensation work capacity forms finding "blanket preclusions on
any work activity" were "conclusory and unsupported . . . in
light of the unremarkable objective evidence."  AR 78-79.

        The ALJ further found that Dr. Parsons's subsequent
"extreme" lifting and arm movement limitations were "simply not
borne out by the record."  AR 79.  The ALJ explained that
"[t]reatment notes throughout 2013 failed to reveal the kind of
ongoing elbow symptoms that had led to her initial surgery and
courses of occupational therapy."  Id.  In addition, the ALJ
reasoned that if Lacy had the "degree of limitation" suggested
by Dr. Parsons, Lacy "would have been treat[ed] regularly
throughout 2013, that a provider would discuss the notion of
additional surgery in light of past success, and that she would
require more than over-the-counter pain medication once a week
as she testified to at the hearing."  Id.

        Lacy argues that the ALJ erred because he "failed to
consider [the] long-term treating relationships" of Dr. Tran and
Dr. Parsons.  The ALJ, however, was not required to "explicitly

21

take account of all the [20 C.F.R. § 404.1527(c)] factors."
Eley, 2015 WL 1806788, at *2.  Here, the ALJ's analysis focused
on the supportability and consistency of the treating
physician's opinions.  Such analysis is acceptable as long as
the court is "able to discern the rationale the ALJ used to
reach his determination and that determination is founded on
'good reasons' that are supported by substantial record
evidence."  Figueroa v. Astrue, No. 11-CV-100-PB, 2012 WL
2090517, at *6 (D.N.H. June 7, 2012).

      Further, as summarized above, the medical conclusions of
both Dr. Tran and Dr. Parsons reveal an inconsistency with other
aspects of the medical record which lends credence to the ALJ's
assignment of little weight.  See 20 C.F.R. § 404.1527(c)(3);
see also Ford v. Barnhart, No. 04-CV-194-PB, 2005 WL 1593476, at
*7 (D.N.H. July 7, 2005) ("One strong indication of the
credibility of an individual's statements is their consistency,
both internally and with other information in the case record.")
(quoting SSR 96-7P, 1996 WL 374186, a *5 (S.S.A. 1996)).  Thus,
based on the foregoing, substantial evidence supports the ALJ's
determinations of weight.  See Wenzel v. Astrue, No. 11-CV-269-
PB, 2012 WL 2679456, at *5 (D.N.H. July 6, 2012) ("Although
other allocations of weight to the medical opinions may have
been possible on this record, the ALJ adequately explained his
reasons for discounting [the treating physician's] opinion, and

                              22

those reasons are supported by substantial evidence in the record.").[3]

### 3.   The ALJ's Credibility Assessment of Lacy

Lacy lastly argues that the ALJ's credibility assessment of her was improper because the ALJ did not specify which statements he found credible and failed to "weigh the factors of [her] daily activities . . . which participated and aggravated her symptoms."  Doc. no. 9-1 at 14-15.

"Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, any statements of the individual concerning his or her symptoms must be carefully considered . . . ."  SSR 96-7P, 1996 WL 374186, at *3.  SSR 96-7P outlines a two-step process for analyzing a claimant's subjective reports of pain and functional limitations.  First, the ALJ must determine whether the claimant is suffering from "an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms.  Id. at *2.  If the claimant satisfies the first step, the ALJ must next

> evaluate the intensity, persistence, and limiting
> effects of the individual's symptoms to determine the

---

[3] Lacy's remaining allegations of error are without merit because the record adequately supports the ALJ's conclusions and supports his obligation to provide "good reasons" for his determinations of weight.  20 C.F.R. § 404.1527(c)(2).

extent to which the symptoms limit the individual's
ability to do basic work activities.  For this
purpose, whenever the individual's statements about
the intensity, persistence, or functionally limiting
effects of pain or other symptoms are not
substantiated by objective medical evidence, the
adjudicator must make a finding on the credibility of
the individual's statements based on a consideration
of the entire case record.

Id.

Here, the ALJ properly followed this two-step procedure.
At step one, the ALJ found that Lacy's "medically determinable
impairments could reasonably be expected to cause some of the
alleged symptoms."  AR 77.  At step two, the ALJ concluded that
"many of [Lacy's] statements concerning the intensity,
persistence and limited effects are these symptoms are generally
credible.  However, her statements in combination with the
medical evidence of record suggest that her symptoms do not
impose disabling-level limitations . . . ."  Id.

Contrary to Lacy's contentions, the ALJ provided specific
reasons for his credibility finding.  The ALJ first noted that
Lacy "testified that she is unable to work due to the limited
effects of bilateral epicondylitis of the elbows[,]" and added
that Lacy described her pain "as roughly equal in each arm" and
"endorsed persistent pain and weakness from overuse as the
primary symptoms."  Tr. 76.  The ALJ next compared these
statements to seemingly contradictory testimony by Lacy.  The
ALJ remarked that Lacy "estimated that her pain level averages a

24

[five] out of [ten]" but "could not recall when her pain was last above a [five]." Id.  The ALJ continued to note that Lacy "testified that she takes over-the-counter Aleve for pain about once a week, but could not recall when she last took it."  Id. In addition, the ALJ mentioned that although Lacy "added that flare-ups in her symptoms are triggered by activities like cleaning snow off the car and tending to food on the stove . . . she cannot remember when her last flare-up occurred."  Id. at 76-77.

Furthermore, the ALJ found that Lacy could perform a variety of household tasks:

> In a typical day, [Lacy] admitted that she is able to do household chores, cook for her family, dress and bathe herself, do laundry, mow a section of the lawn if necessary, email and use Facebook on the computer for about an hour, and watch several hours of television.  Additionally she walks 30 minutes per day, weather permitting, which has helped her lose 5 pounds and improve her cholesterol.  She also visits her sister-in-law once a week in the next town over. Although her daughters occasionally help with chores, she stated that she handles most things on her own. However, she noted that she often rests after activity.

Tr. 77.

The ALJ's consideration of Lacy's daily activities is proper in making a credibility finding.  See Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) ("While a claimant's performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce,

evidence of daily activities can be used to support a negative credibility finding.").   Therefore, because the ALJ made specific findings as to the credibility of Lacy's statements as well as appropriately considered her daily activities, the ALJ did not err in assessing the credibility of Lacy's claims of disabling symptoms.[4]

## IV. <u>Conclusion</u>

For the reasons set forth above, Lacy's motion to reverse the ALJ's decision, doc. no. 9, should be denied, and the Acting Commissioner's motion to affirm the ALJ's decision, doc. no. 11, should be granted.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  <u>See</u> Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order. <u>See</u> <u>United States v. De Jesús-Viera</u>, 655 F.3d 52, 57 (1st Cir. 2011); <u>Sch. Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d

---

[4] To the extent that Lacy argues that the ALJ did not consider certain testimony by her because he did not include it in his written opinion, "the First Circuit has held that an ALJ's written decision need not directly address every piece of evidence in the administrative record" if it is cumulative of evidence already discussed by the ALJ or "otherwise fail[s] to support the claimant's position."  <u>Lord v. Apfel</u>, 114 F. Supp. 2d 3, 13 (D.N.H. 2000).

554, 564 (1st Cir. 2010).

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

July 28, 2016

cc:   Laurie Smith Young, Esq.
      D. Lance Tillinghast, Esq.
      Michael T. McCormack, Esq.